# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal Action No. 6:11-cr-02302-JMC-1 |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| John Cannon, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on Defendant John Cannon's ("Cannon") Motion to Suppress Statements [Dkt. No. 144] and Supplemental Motion to Suppress Statements [Dkt. No. 238] pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure.[1] The court held an evidentiary hearing on this matter on October 10, 2012. For the following reasons, the court grants in part and denies in part Cannon's motion.

Cannon was indicted on November 15, 2011, by a Federal Grand Jury on one count of conspiracy to possess with the intent to distribute in excess of five (5) kilograms of cocaine and one count of participating in a conspiracy to launder the proceeds of drug sales. He was arrested on November 29, 2011, at his residence in Lithonia, Georgia. Cannon contends that incident to his arrest, he was read his *Miranda*[2] rights, at which time he invoked his right to remain silent and requested an attorney. Cannon complains that a law enforcement officer attempted to improperly influence him by

---

[1] Co-defendant Kasondra Cannon made an oral motion at the hearing requesting to join in all evidentiary motions made by John Cannon, which the government acknowledged to the extent Mrs. Cannon had standing to assert such motion. Accordingly, the court's order on the pending motions will apply to Mrs. Cannon where appropriate.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1

explaining that his cooperation could potentially result in a sentence reduction. Cannon further contends that after he invoked his rights, law enforcement personnel continued to engage him in conversations attempting to elicit incriminating statements in violation of his Fifth Amendment rights.

**DISCUSSION**

The United States Supreme Court has held that, to protect the Fifth Amendment privilege against compelled self-incrimination, a criminal defendant must be advised of his right to remain silent and his right to have an attorney present during questioning prior to any custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Once the defendant invokes his right to counsel, all interrogations must stop until the suspect has an opportunity to have the assistance of his attorney. *Id*. at 474.

> In *Edwards* [*v. Arizona*], the Supreme Court "re-confirmed" the *Miranda* principles regarding the right to counsel during custodial interrogation and held that once a suspect invokes that right, police may not interrogate the suspect further "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

*United States v. Nichols*, 438 F.3d 437, 442-43 (4th Cir. 2006) (citing *Miranda* and *Edwards v. Arizona*, 451 U.S. 477 (1981)).

In *Edwards*, the defendant was arrested and taken into custody, at which point the police advised him of his *Miranda* rights. Edwards requested the assistance of an attorney and the officer ceased the interrogation. The following day, prior to the arrival of counsel, two different officers talked to Edwards. They advised him of his *Miranda* rights again, and Edwards made incriminating statements to the officers. On review of the Arizona Supreme Court's decision finding that Edwards had voluntarily made his statements, the United States Supreme Court held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right

cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, 451 U.S. at 484.

"Police officers simply cannot continue to question a suspect despite his request for counsel 'in the hope that [he] might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all.'" *United States v. Johnson*, 400 F.3d 187, 194 (4th Cir. 2005) (quoting *Smith v. Illinois*, 469 U.S. 91, 99 (1984) (internal citations and quotation marks omitted)). Instead, all interrogation must halt unless the suspect first initiates the communication with the police. *See Edwards*, 451 U.S. at 484-85. The rule prevents police "badgering or overreaching – explicit or subtle, deliberate or unintentional." *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (internal citations and quotation marks omitted). All officers are prohibited from interrogating the suspect after he invokes his rights, not just the ones who were actually there when he did so. *See Johnson*, 400 F.3d at 194.

To determine whether the government has obtained a statement in violation of the rule articulated in *Edwards*, the court must

> determine whether the accused actually invoked his right to counsel. If he did, the court must determine who initiated the further discussions that yielded the eventual statement. If an accused, after invoking his right to counsel, did not initiate further discussions with the police or knowingly and intelligently waive the right he had invoked, any statement procured by the police is inadmissible at trial.

*Id*. (internal citations and quotation marks omitted).

To determine whether a defendant has invoked his right to counsel, the court must evaluate if the defendant took any action that "can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). A defendant's invocation of his right to counsel must be clear and unequivocal. *See Davis v. United States*, 512 U.S. 452, 459

3

(1994). Once it is established that the defendant requested the assistance of an attorney, the government must show by a preponderance of the evidence that the defendant reinitiated further communication with the police to avoid violation of the *Edwards* rule. *See Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010). The defendant must freely initiate communication and not be coerced or pressured into communicating with police. *Id*. at 1220 (quoting *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990)).

Cannon contends that he invoked his right to counsel, but was denied access to his attorney. Cannon did not testify at the evidentiary hearing. However, Kasondra Cannon, his wife and co-defendant in this case, testified regarding the circumstances of the arrest of her and Cannon. She testified that officers entered her residence and placed Cannon, her, and their son under arrest. Thereafter, they were handcuffed and escorted to the living room area of the residence accompanied by several law enforcement officers. Mrs. Cannon further testified that, while seated in the living room, a tall uniformed officer administered the *Miranda* rights to the Cannons as a group. She stated that the officer inquired as to whether they understood the *Miranda* rights as he had read them, and she indicated that they each answered in the affirmative. She then attested that her husband, Defendant Cannon, requested to speak to his attorney. When asked whether Special Agent Farid "Jay" Rajaee, a co-case agent in this matter working for the United States Drug Enforcement Administration ("DEA"), was present during this exchange, Mrs. Cannon responded that Agent Rajaee was only present intermittently but that Agent Rajaee commented to her husband that he would not be able to use his requested attorney.

Agent Rajaee testified at the hearing that he was present for the execution of the search warrant at the Cannon residence in Lithonia, Georgia on November 29, 2011. Because the warrant was executed outside the District of South Carolina, Agent Rajaee indicated that the tactical operation was

lead by the Atlanta field division of the DEA, and that he and the other agents from South Carolina were among the last to enter the home. Agent Rajaee further testified that he *Mirandized* the Cannons using a card called the DEA 13A shortly after entering the home and gathering the three Cannon family members in the living room area of the home. He specifically recalled asking each of the Cannons if they understood the rights as he had read them and gaining an affirmative acknowledgment of the same. However, when questioned specifically about Defendant Cannon's request to speak to a particular attorney, Agent Rajaee stated "I don't remember that." When pressed further by defense counsel concerning whether Agent Rajaee had told Cannon he could not be represented by the requested attorney, Agent Rajaee responded "I don't remember that conversation." But, Agent Rajaee agreed with defense counsel's statement that, had Agent Rajaee remembered any conversation where Cannon requested the specific attorney by name, Agent Rajee would have construed that as an invocation of the right to counsel. Agent Rajaee also stated that he could not be sure exactly when he read the Cannons their *Miranda* rights after law enforcement's entry into the home because he was remotely managing the execution of multiple warrants in several different locations utilizing as many as ninety (90) investigators who were periodically reporting information to him.

Based on the testimony provided at the hearing on this motion, the court determines that Cannon invoked his right to counsel. The government has simply not carried its burden to demonstrate that Cannon clearly and unambiguously waived his right to counsel. First, the court finds Kasondra Cannon's testimony "was neither inherently incredible nor directly contradicted by the government's witnesses." *United States v. Tolley*, CCB-08-0523, 2009 WL 3259129, at *1 (D. Md. Oct. 8, 2009). Moreover, the court finds that Agent Rajaee's inability to remember the conversation with Cannon concerning any request for counsel – as contrasted with his vivid recall of other details of the

5

conversation – does not directly contradict Kasondra Cannon's testimony concerning Defendant Cannon's request to speak with an attorney. *See id.* (suppressing statements made by a defendant upon finding his testimony that he had invoked his right to counsel sufficient in light of the government witness's inability to recall whether the defendant requested an attorney).

Having determined that Cannon invoked his right to counsel, the court must next consider who initiated continued conversation after the invocation of the right. In this case, there is no serious dispute as to who initiated the communication. Agent Rajaee testified that he segregated the Cannons and, while Defendant Cannon was with Agent Rajaee in the master bedroom suite of the residence, Agent Rajaee began complimenting Cannon on the home and casually inquiring as to the status of any mortgage on the property.

Accordingly, because Cannon invoked his right to counsel and was subject to further interrogation by law enforcement despite the invocation of his right, the court finds that his statements made subsequent to the violation of his rights should be suppressed. Particularly, the court will suppress Cannon's oral statements and non-verbal gestures to Agent Rajaee in response to questions concerning his home and in response to questions concerning the items found during the execution of any warrants.

However, the court does not find that Cannon's statements to law enforcement concerning the location of an item subject to a seizure warrant and his consent to law enforcement allowing them to search that location should be treated as the fruit of a *Miranda* violation as Cannon suggests in his motions. Any physical evidence obtained by law enforcement as a result of Cannon's statements concerning the item can be separated from any *Miranda* violation because law enforcement personnel were aware of the item prior to Cannon's statement and were seeking the items only because they were

6

subject to a seizure warrant. *See United States v. Gilkeson*, 431 F. Supp. 2d 270, 281 (N.D.N.Y. 2006) (noting that courts generally uphold consents to search despite *Miranda* violations where the "consents [are] requested based on information the police had prior to the individual's consenting"). Additionally, Cannon's statements and consent to search his property for the item did not involve an incriminating statement and did not implicate the Fifth Amendment. *See United States v. Taylor*, 202 F.3d 262, 2000 WL 6146 (4th Cir. Jan. 6, 2000) (unpublished table opinion) (holding that "Asking for and receiving consent was not part of the interrogation because giving consent is not a self-incriminating statement."); *see also United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1568 (10th Cir. 1993) (noting that "Every federal circuit court which has addressed the *Miranda* issue presented here has reached the conclusion that a consent to search is not an incriminating statement.").

## CONCLUSION

Having considered the memoranda filed by the parties, arguments of counsel and testimony at the hearing, and the record currently before the court, the court **GRANTS IN PART AND DENIES IN PART** Defendant Cannon's Motion to Suppress Statements [Dkt. No. 144] and Supplemental Motion to Suppress Statements [Dkt. No. 238].

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

November 1, 2012
Greenville, South Carolina

7