**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal Action No. 6:11-cr-02302-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| John Cannon, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Defendant John Cannon's ("Cannon") Motion in Limine [Dkt. No. 286] to exclude certain evidence from trial. For the following reasons, Cannon's motion is denied without prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

Cannon and co-defendant Kasondra Cannon were jointly indicted in the present action on November 15, 2011, by a Federal Grand Jury on one count of conspiracy to possess with the intent to distribute in excess of five (5) kilograms of cocaine and one count of participating in a conspiracy to launder the proceeds of drug sales. The Government contends that its investigation into the Cannons' activities revealed numerous sources of information who allege that Cannon has been involved in the illegal drugs trade since the 1990s through 2011.

On November 29, 2011, agents from the Drug Enforcement Agency arrested the Cannons at their primary residence in Lithonia, Georgia. The agents conducted a search of four residences owned by the Cannons and discovered $364,000 in cash, four firearms, and numerous vehicles.

Kasondra Cannon was released from custody on a secured bond shortly after her arrest, but John Cannon has remained in custody. While in custody, Cannon has communicated with

his wife and others by phone, and during these calls, he allegedly discussed payments made to his lawyers, information related to a firearm stored or previously stored at one of his residences, and other allegedly inculpatory information.

Cannon filed the instant motion to exclude the following information: 1) evidence from any witness describing events which occurred outside the statute of limitations for the crimes with which he is presently charged;[1] 2) evidence of more than 550 telephone conversations between Cannon and others, including his wife, while Cannon has been in custody; and 3) evidence of the source and amount of fees paid to Cannon's attorneys. Cannon contends that such evidence should be excluded under Rule 401 and Rule 403 of the Federal Rules of Evidence. The Government filed a response to Cannon's motion [Dkt. No. 305] in which it requested the court deny Cannon's motion and in which it further requested the court to hold a hearing to determine the source and amount of attorney's fees Cannon paid to his defense counsel and the method by which he made such payments. The court held a hearing on December 11, 2012, in which the parties argued their respective positions on the instant motion.[2]

## DISCUSSION

Rule 401 of the Federal Rules of Evidence states that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401. Rule 403 provides that the

---

[1] At the hearing, defense counsel clarified that he was seeking the exclusion of evidence of alleged drug activity that occurred before the date on which the Government alleges the charged conspiracy began.

[2] The parties also briefly addressed the Government's Notice of Intent to use Certain Evidence [Dkt. No. 257]. At the hearing, defense counsel informed the court of its intent to respond more fully to the Government's notice when the Government provided it with details about the evidence sought to be introduced. The court will address this matter in a separate order upon the appropriate motion.

court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

**A. Evidence from any witness describing events which occurred outside the statute of limitations.**

Cannon argues that anticipated witness testimony describing events that occurred as long ago as the mid-1990s should be excluded under Rule 401 and Rule 403. Cannon primarily expresses concern that the Government would use evidence of Cannon's alleged drug activity occurring prior to the time period described in the indictment to increase the drug quantity attributable to the charged conspiracy. The Government agreed that any evidence of pre-indictment activity would be offered as background information only and would not be admitted for the purpose of increasing Cannon's drug weights. The court will issue a limiting instruction to the jury that any evidence presented alleging that Cannon was involved in drug activity before the dates alleged in the indictment may not be used to prove the drug weights attributable to Cannon or the charged conspiracy. Therefore, the court denies without prejudice Cannon's pre-trial motion to exclude otherwise relevant witness testimony about Cannon's alleged pre-indictment drug activity.

**B. Evidence of the more than 550 telephone conversations between Cannon and others including his wife, while Cannon has been in custody.**

Cannon argues that the contents of telephone calls he made from prison should also be excluded under Rules 401 and 403 of the Federal Rules of Evidence. Additionally, Cannon argues that the contents of telephone calls[3] he made to his wife from prison should be excluded

---

[3] Cannon does not challenge the legality of the recording of the phone calls.

under the marital communication privilege.  Cannon's defense counsel admits that he does not know which of the calls will be offered into evidence, and thus he cannot make particular objections to specific calls at this time.  The Government has not specified to this court the content of the specific phone calls it hopes to offer into evidence. However, it claims the right to admit all relevant conversations that Cannon had using the prison's telephone since Cannon was warned through a recorded message[4] that preceded every phone call that his conversations might be monitored and that he therefore waived any privilege he may have had regarding those conversations.

At the hearing, Cannon argued additionally that introducing any of the calls he made from prison would be inherently unfairly prejudicial because the calls would demonstrate that Cannon was previously in custody. The Government contends that any prejudice would be minimal since jurors are sufficiently sophisticated to know that defendants awaiting trial on federal drug and gun charges are likely to have been in custody at some point prior to trial.

Cannon has not directed the court to any authority absolutely barring the admissibility of the contents of phone calls made from prison. The Fourth Circuit has previously recognized the admissibility of prison phone calls.  *See United States v. Bagguley*, 838 F.2d 468 (4th Cir. 1987) (per curiam) (finding recordings of prison phone calls admissible despite challenges based on the best evidence rule, the authenticity of the calls, and the validity of regular interception of prisoner calls under Title III of the Omnibus Crime Control and Safe Streets Act of 1968); *United States v. Hammond*, 286 F.3d 189 (4th Cir. 2002) (upholding the district court's decision

---

[4] At the hearing, the Government introduced testimony from Drug Enforcement Agency Task Force Officer Skardon who testified that he listened to some of Cannon's recorded conversations and that prior to each call, a recorded disclaimer stated that "calls will be recorded and may be monitored."

4

not to suppress evidence of prison phone calls and allow their use as evidence given that the recording was legal within both the law enforcement and the consent exceptions under Title III of the Omnibus Crime Control and Safe Streets Act of 1968).

Without knowing the content of the phone calls that the Government intends to introduce, it is impossible for the court to issue a preliminary determination as to whether the calls are relevant and if they are relevant, whether their probative value would be outweighed by any of the factors listed in Rule 403, including whether the probative value of the calls would be outweighed by the potential prejudice that would result from the jury learning that Cannon was previously incarcerated. The court will determine the admissibility of specific phone calls upon receipt of more specific information about this matter from the parties.

Cannon further argues that conversations between him and his wife should be excluded under the marital communication privilege. "Marital communications are presumptively confidential." *United States v. Parker,* 834 F.2d 408, 411 (1987). This privilege is based on the policy that "the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship . . . outweigh[s] the disadvantages to the administration of justice which the privilege entails." *Wolfle v. United States*, 291 U.S. 7, 14 (1934); *United States v. Hamilton*, 11-4847, 2012 WL 6200731 (4th Cir. Dec. 13, 2012). However, "when dealing with a verbal communication, '[t]he presence of a third party negatives the presumption of privacy.'" *Parker,* 834 F.2d at 411 (quoting *Pereira v. United States,* 347 U.S. 1, 6 (1954)). Further, "one who is on notice that the allegedly privileged material is subject to search may waive the privilege when he makes no efforts to protect it." *Hamilton*, 2012 WL 6200731, at *4 (finding that a defendant's emails to his wife sent from his work computer were not subject to the marital communication privilege). *See also United States v. Ramsey*, 786 F. Supp. 2d 1123, 1126 (E.D.

5

Va. 2011) (finding conversations between an incarcerated husband and his wife made over the phone and in person while he was confined in jail negated the presumption of confidentiality). For these reasons, an incarcerated spouse communicating with his non-incarcerated spouse over a prison telephone generally cannot claim the marital privilege because neither party has a reasonable expectation of privacy or confidentiality in such a setting. *See United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998). Furthermore, to the extent Cannon's conversations with his wife involved matters related to the criminal charges against both of them, the privilege would not protect either spouse. *Parker*, 834 F.2d at 411 (citing *United States v. Broome,* 732 F.2d 363, 365 (4th Cir. 1984)).

The court finds that Cannon's telephone calls made from prison are not privileged. However, their relevance and potential prejudicial effect cannot be ascertained at this time. For these reasons, the court denies without prejudice Cannon's motion to exclude all of Cannon's telephone conversations made while incarcerated.

### C. Evidence of the source and amount of attorney's fees.

Cannon argues that evidence revealing the source and amount of fees paid to his attorney and the method by which such payments were made should be excluded under Rule 401 and Rule 403. At the hearing, Cannon argued that information about fees paid to his attorney would be unnecessarily cumulative under Rule 403 of the Federal Rules of Evidence since, according to Cannon's estimate, a substantial amount of the Government's evidence against him relates to his income and the issue of allegedly unexplained wealth. Cannon further argues that the disclosure of the source, amount and method of payment of attorney's fees would violate Cannon's Fifth Amendment and Sixth Amendment rights.

The Government argues that the source and amount of attorney's fees paid in this case is potentially relevant because it could demonstrate that Cannon had sufficient funds to hire private counsel despite the fact that Cannon was unemployed prior to his arrest and had spent a large part of his adult life in prison.  The Government acknowledged that it was not aware of the full amount Cannon had paid to his attorney.  However, the Government claimed it had evidence that Cannon's granddaughter had, on at least one occasion, paid defense counsel $20,000.[5]  The Government also claimed it has evidence that Cannon's total available funds between 2005 and 2010 could have only amounted to an estimated $33,000.  The Government asked the court to require the production of the source, amount and method of payment of fees paid to Cannon's attorney.  The court denied that request.  Additionally, the Government proposed a joint stipulation in which Cannon would provide information about the amount he paid defense counsel, the source of the funds used to pay his attorney's fees, and the method(s) by which he paid the fees, all without disclosing defense counsel's name.  Cannon did not agree to such a stipulation.

The United States Court of Appeals for the Fourth Circuit has held that "[e]vidence of unexplained wealth is relevant in a narcotics prosecution as evidence of illegal dealings and ill-gotten gains."  *United States v. Grandison*, 783 F.2d 1152, 1156 (1986) (finding that expenditures of large sums of cash prior to the defendant's arrest was clearly relevant "given the

---

[5] Defense counsel speculates that a subpoena sent to Cannon's granddaughter is meant to illicit further information about this and potentially other payments.  At the hearing, defense counsel asked this court to quash that subpoena, presumably on the grounds that the subpoena is seeking the disclosure of privileged information. *See* FED. R. CIV. P. 45(3)(a)(iii). ("On timely motion, the issuing court must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies…").  The court denies without prejudice Cannon's motion to quash the subpoena absent some showing that the information sought is indeed privileged or otherwise protected.

fact that [the defendant] was unemployed and only recently paroled."). In addition, the Fourth Circuit has held that fee agreements are not confidential communications protected by attorney-client privilege as long as they do not reveal confidential information. *United States v. Ricks*, 776 F.2d 455, 465 (4th Cir. 1985)*; In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 354 (4th Cir. 1994) ("The attorney-client privilege normally does not extend to the payment of attorney's fees and expenses."); *United States v. In re Grand Jury Matter,* 789 F. Supp. 693, 695 (D. Md. 1992) (finding fee arrangement information revealing the date and amount of payments and the identity of the persons making the payments are not privileged because these facts reveal nothing about the advice sought or given). If not privileged, the Government argues, evidence of the source and amount of attorney's fees paid, and the method of such payments is admissible as further evidence of Cannon's unexplained wealth. While this may be true, at this time, there is insufficient evidence that would allow the court to determine whether Cannon's payments to counsel are relevant. The Government's evidence that Cannon's granddaughter paid defense counsel $20,000 does not demonstrate that Cannon was the source of the funds. Without knowing definitively that Cannon was the source of the funds, the court cannot consider the payment as evidence of Cannon's alleged unexplained wealth. Even if the court could determine that Cannon's payment of attorney's fees was relevant, the court cannot, at this time, determine if such evidence is needlessly cumulative as Cannon argues or is otherwise subject to exclusion under Rule 403 of the Federal Rules of Evidence.

Defense counsel also objected to the release of information regarding the fees Cannon paid to his attorney on the grounds that to do so would violate Cannon's Fifth Amendment right against self-incrimination and his Sixth Amendment right to the effective assistance of counsel.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  The right against self-incrimination "applies only when the accused is compelled [1] to make a testimonial communication [2] that is incriminating."  *Fisher v. United States,* 425 U.S. 391, 408 (1976).   In this case, neither the court nor the Government has compelled Cannon to provide any information related to the attorney's fees he paid.  Without making this threshold showing, Cannon cannot claim that he has been forced to provide incriminating testimony against himself in violation of his Fifth Amendment right.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right  . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI.  "An element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).  At the hearing, defense counsel argued that to reveal information about the fees Cannon paid him would essentially require him to be a witness against his own client.  Such a scenario would arguably create a conflict of interest between client and attorney, forcing Cannon to retain other counsel, thus violating Cannon's Sixth Amendment right to be represented by counsel of his choice.  However, the Fourth Circuit has addressed and dismissed a similar argument in *United States v. (Under Seal)*, 774 F.2d 624 (4th Cir. 1985).  There, a defendant who was targeted by a grand jury in a drug conspiracy case appealed the district court's denial of his motion to quash a grand jury subpoena served upon his attorney seeking information related to the fees defendant paid his attorney.  *Id.* at 624-5.  The defendant argued on appeal that enforcement of the subpoena would force his attorney to become a witness against him, thereby requiring the defendant to retain other counsel to avoid the resulting conflict of interest.  *Id.* at 627.  The court

refused to accept the argument that enforcement of the subpoena would violate the defendant's Sixth Amendment rights, finding that there existed a number of ways by which the Government could produce the information that would not disqualify the defendant's attorney.  *Id.* Furthermore, the court was "unable to accept" the proposition that finding a Sixth Amendment violation in such a circumstance would effectively render information about fee payments immune from discovery by a grand jury "so long as there remained a possibility of further representation by the same attorney." *Id.* at 628.  For these reasons, the court finds no merit in Cannon's claims that admitting information about attorney's fees paid would violate his Fifth and Sixth Amendment rights.

## CONCLUSION

Having considered the memoranda filed by the parties and the record currently before the court, the court **DENIES** Cannon's Motion in Limine [Dkt. No. 286] without prejudice.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

December 20, 2012
Greenville, South Carolina